PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

RAYMOND JACKSON,
                      Plaintiff,

                                                              Case No. 16-CV-6710
   v.
                                                              DECISION AND ORDER

MICHAEL SHEEHAN, et al.,
                      Defendants.
───────────────────────────────

## INTRODUCTION

*Pro se* Plaintiff Raymond Jackson brings this civil rights action against Defendants pursuant to 42 U.S.C. § 1983. ECF No. 16 ("Amended Complaint"). Plaintiff alleges that, while he was incarcerated at the Five Points Correctional Facility ("Five Points"), Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they refused to treat his Hepatitis C infection for four years. ECF No. 16 at 2-4. On March 2, 2020, following completion of discovery, Defendants moved for summary judgment. ECF No. 54. Despite being provided with notice that his case could be dismissed if he filed no response, ECF No. 54-2, Plaintiff has filed no papers in opposition. For the reasons that follow, Defendants' motion is GRANTED, and the Amended Complaint is dismissed with prejudice.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the

1

light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

The non-moving party may defeat a summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because Plaintiff is proceeding *pro se*, his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted). Nevertheless, proceeding *pro se* does not relieve a litigant from the usual summary judgment requirements. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

## DISCUSSION

**A.     Plaintiff's Allegations**

The Amended Complaint alleges that Plaintiff had suffered from hepatitis C for thirty years when he reported his condition to Defendant Haimes in 2014 and noted further that it was causing him high fevers, loss of sleep, and extreme pain. ECF No. 16 ¶ 1. After examination by a gastrointestinal specialist, "triple drug" treatment was recommended. *Id*. ¶ 3. Defendant Haimes forwarded this recommendation to the Chief Medical Officer of the Department of Corrections and Community Supervision ("DOCCS"), Defendant Koenigsmann. *Id*. ¶ 4. Defendant Koenigsmann refused, saying that the treatment would not be afforded until Plaintiff reached level

four stage fibrosis, and was thus "life threateningly ill." *Id*. ¶¶ 5-6. Plaintiff's grievances were denied, and the treatment was not provided. *Id*. ¶¶ 7-9.

Upon his transfer to the Sing Sing Correctional Facility in February of 2016, Plaintiff again sought treatment, and was again seen by a gastroenterologist who recommended Harvoni. *Id*. ¶¶ 11-17. At the time of the filing of his Amended Complaint, January 24, 2018, Plaintiff implies that he has not been provided with effective treatment for hepatitis C for the nearly four years since he made his first report. *Id*. ¶ 18.

**B.     Defendants' Motion for Summary Judgement**

   **i.     Defendants' Rule 56 Statement Regarding Hepatitis C**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants assert facts which they claim are not or cannot be genuinely disputed. ECF No. 54-1; *see* Fed. R. Civ. P. 56(c)(1).[1] Approximately one percent of the American population is infected with the Hepatitis C virus ("HCV"), a disease which primarily attacks the liver, and more than half of those infected are unaware of their illness. ECF 54-1 ¶ 5.[2] Due to the prevalence of high-risk lifestyles, approximately 29% of the American prison population is infected with HCV. *Id*. Approximately 15% to 25% of infected individuals "are able to clear the virus on their own without drug treatment." *Id*. ¶ 6. Approximately 70% of infected individuals will develop chronic HCV. *Id*.

The progression of HCV is tracked by measuring the patient's fibrosis level, on a scale measuring from F0 (no measurable fibrosis) to F4 (significant fibrosis or cirrhosis). *Id*. ¶ 7. HCV is a disease with a slow rate of progress, and generally takes decades to reach a severe state, with

---

[1] ECF No. 54-2 contains the notice required by Local Rule 56(b) to the effect that "the claims Plaintiff asserts in his complaint may be dismissed without a trial if he does not respond to this motion by filing his own sworn affidavits or other papers as required by Rule 56."

[2] As stated above, Defendants' Rule 56 Statement contains references to specific record documents in each cited paragraph. These are not repeated unless necessary for clarification of the facts alleged to be undisputed.

3

approximately 20% of patients developing cirrhosis over a period of twenty to thirty years. *Id*. ¶ 8. This may be accelerated by concurrent issues, such as other infections and chronic alcohol use. *Id*. Successful treatment removes the virus, but the HCV antibodies remain. *Id*. ¶ 9.

Defendant Koenigsmann established procedures for screening inmates for HCV and for treatment of infected prisoners. *Id*. ¶¶ 11-14. Approval for HCV treatment was a three-step process. First, the inmate's primary care physician arranges for an outside doctor to evaluate the patient and recommend treatment. *Id*. ¶ 15. Second, the proposal is sent to Defendant Koenigsmann for review using the appropriate form. *Id*. ¶ 16. Third, Dr. Koenigsmann reviews the workup and consults the "guidelines drafted by the American Association for the Study of Liver Diseases ("AASLD") and national medical community standards, amongst other things." *Id*. ¶¶ 17-18. If the proposed treatment is denied, the patient is monitored, and their fibrosis level is checked every six months. *Id*. ¶ 20.

Where an inmate's fibrosis level is low (Stage F0 to F2), Defendant Koenigsmann considers drugs which are soon-to-be-available, as well as the remaining inmate population, many of whom suffer from more advanced stages of the disease. *Id*. ¶ 21. Further, the administration of treatments when they are new, such as (then-new) Harvoni, carry additional risks because of the unknowns inherent in newer medicines, as well as a concern that "large and improper administration could result in a drug-resistant form of" HCV. *Id*. ¶¶ 23-24.

At the time of Plaintiff's initial evaluation, the forms of treatment for HCV were undergoing significant changes, and "DOCCS had suspended the use of certain older drugs, such as Telaprevir, per the AASLD's recommendations." *Id*. ¶ 42. The triple therapy initially recommended for Plaintiff posed serious risks to a patient, potentially worsening a patient's liver disease and causing liver failure and death. *Id*. ¶ 45. Triple therapy posed further risks such as

blood disorders, autoimmune disorders, and psychiatric decompensation. *Id*. ¶ 46. Most importantly, at that time safer and highly effective treatments were expected in the near future. *Id*. ¶ 55.

      ii.      **Defendant's Rule 56 Statement Regarding Treatment of Plaintiff**

In October of 2013, Defendant Physician's Assistant ("PA") Haimes ordered blood work to determine Plaintiff's eligibility for drug therapy. *Id*. ¶ 32. Plaintiff's initial fibrosis score was 0.49, within the range of F2. *Id*. ¶ 34. A liver ultrasound was ordered and performed on January 9, 2014. *Id*. ¶ 36. No issues were noted with Plaintiff's liver. *Id*. ¶ 37. On February 3, 2014, Plaintiff was seen by an infectious disease specialist who recommended triple drug therapy to treat Plaintiff's HCV. *Id*. ¶38. Triple drug therapy involved treatment with pegylated interferon, ribavirin, and Telaprevir. *Id*. Plaintiff signed a treatment request form, and the request for triple drug therapy was submitted. *Id*. ¶ 40. Defendant Haimes could not prescribe the treatment, but could only submit the request to Defendant Dr. Koenigsmann for approval. *Id*. ¶ 41.

At the time of the review of the submission in March 2014, DOCCS practice guidelines were being updated to reflect the current state of HCV treatment, and use of the drug Telaprevir had been suspended in accord with the recommendations of the AASLD. *Id*. ¶ 42. Because of this, and because Plaintiff's fibrosis level was F2, his liver functions were normal and he had no other factors placing him at immediate risk, the request for triple drug treatment was denied. *Id*. ¶ 56. AASLD guidelines recommended delay in treatment for patients with early stage fibrosis because highly effective treatments were expected in the near future. *Id*. ¶ 53. DOCCS policy at the time was to treat patients with stage F4 fibrosis with Sofosbuvir and Simeprevir on an emergency basis. *Id*. ¶ 57. Defendant Koenigsmann expressed that, in his medical opinion, waiting for a new and better treatment did not place Plaintiff at any significant health risk and was

the medically prudent course of action. *Id*. ¶ 56. Plaintiff was informed of the decision and the reasons behind it. *Id*. ¶ 60.

Plaintiff's HCV was monitored, and in November 2014, his fibrosis was 0.37, which placed in in stage F1-F2. *Id*. ¶ 65. Therefore, he did not qualify for emergency treatment with Sofosbuvir and Simeprevir. *Id*. ¶ 66. Plaintiff filed a grievance on December 8, 2014, for the refusal to give him treatment for HCV. *Id*. ¶ 68. Nurse Administrator Jansen prepared the response, and he noted that no treatment was currently indicated for Plaintiff's HCV. *Id*. ¶ 73. Neither Haimes nor Jansen possessed the authority to overrule Dr. Koenigsmann. *Id*. ¶ 74. Plaintiff appealed the denial of his grievance to Superintendent Sheahan, who affirmed the decision in deference to Plaintiff's medical providers. *Id*. ¶ 76.

On March 26, 2015, liver function tests were performed to monitor Plaintiff's HCV status, and these showed normal liver function. *Id*. ¶ 78. Plaintiff's fibrosis level on June 29, 2015 was lower than the previous tests, 0.23, placing him at stage F0-F1. *Id*. ¶ 86. This meant that he remained ineligible for the drug treatment which he desired. *Id*. ¶ 87. Defendant Haimes' treatment of Plaintiff ended when Plaintiff was transferred to Downstate Correctional Facility on December 8, 2015. *Id*. ¶ 92. Defendant Haimes notes that Plaintiff asserts in his Amended Complaint that he suffered from high fevers, body aches, sleep loss, night sweats and/or dizziness. *Id*. ¶ 93. Defendant asserts that these are not symptoms of HCV, that they were not reported to him by Plaintiff and were not noted in either of Plaintiff's drug treatment requests. *Id*.

When tested on June 29, 2016, Plaintiff's fibrosis score was 0.32, the lowest score in the stage F1-F2 range. *Id*. ¶ 102. In August 2016, Plaintiff made his second treatment request while incarcerated at the Sing Sing Correctional Facility. *Id*. ¶ 103. Plaintiff's request indicated that he suffered from lesions and that he was over the age of fifty. *Id*. ¶ 105. Despite the stability of

Plaintiff's low, F1-F2 stage fibrosis, due to Plaintiff's age and the possibility that dermatitis was a secondary manifestation of his HCV, Dr. Koenigsmann approved Plaintiff for treatment with Harvoni. *Id*. ¶ 110. Plaintiff was treated with Harvoni from September 13, 2016 through November 13, 2016 and effectively cured of the disease. *Id*. ¶¶ 111-112.

**C.     Analysis**

    **i.     The Eighth Amendment Standard**

Plaintiff claims that the refusal to provide drug treatment for his HCV violated the Eighth Amendment prohibition of cruel and unusual punishment. A claim for denial of medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992). This standard has both an objective and subjective component. Plaintiff's medical needs must be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)). In *Harrison*, the Second Circuit pointed out that

> [medical] conditions . . . vary in severity and . . . a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702). *Compare Chance* (finding serious dental need where plaintiff alleged that he suffered extreme pain, his teeth deteriorated, and he had been unable to eat properly) *and Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (deprivations of needed eyeglasses

may produce consequences that "adequately meet the test of 'suffering' [under] *Gamble*"), *with Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").

Further, Plaintiff must also address the subjective component – that the prison officials were deliberately indifferent to this need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.2d 178, 184 (2d Cir. 2003). Mere disagreement over the proper treatment does not create a constitutional claim because prison officials have broad discretion in determining the type and extent of medical treatment given to inmates, *Thomas v. Pate*, 493 F.2d 151, 157 (7th Cir. 1974), *cert. denied*, 423 U.S. 877 (1975). Thus a court cannot impose the same standards of medical care upon a prison as it would expect from a hospital. *See, e.g.*, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation). "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (citation omitted)).

Furthermore, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim. *See Estelle*, 429 U.S. at 105-06. At the same time, however, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (citation omitted). Thus, in certain instances a physician may be deliberately indifferent if he or

she consciously chooses "an easier and less efficacious" treatment plan. *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (holding that where plaintiff alleged that the prison doctors chose simply to close a wound caused by the severing of his ear rather than attempting to reattach the organ, such treatment could constitute deliberate indifference rather than a mere difference of opinion over a matter of medical judgment); *see also Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (reaffirming position that "choice of an easier but less efficacious course of treatment can constitute deliberate indifference").

### ii.     The Eighth Amendment Standard for Delay in Treatment

The serious medical need inquiry must be tailored to the specific circumstances of each case. *Smith*, 316 F.3d at 185.

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim.

*Id*. Thus, the inquiry is not whether HCV is an objectively serious medical condition, it is, but whether the delay in provision of care was itself sufficiently serious. An alleged delay in treatment due to "a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady" does not present deliberate indifference. *Sloane v. Borawski*, 64 F. Supp. 3d 473, 493 (W.D.N.Y. 2014) (citation omitted). Plaintiff must show that a defendant's decision to delay treatment constituted deliberate indifference. "The requisite level of culpability is akin to criminal recklessness; the defendant must have acted or failed to act while actually aware of a substantial risk that serious inmate harm

9

would result." *Mercer v. APS Healthcare*, Inc., 669 F. App'x 9, 10 (2d Cir. 2016) (internal quotation marks and edits omitted).

      iii.      **Plaintiff's Failure to Respond to the Motion**

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact, the nonmoving party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Schibi v. Comm'r Scott Semple*, 3:17-CV-128 (JCH), 2018 WL 1383401, at *2 (D. Conn. Mar. 19, 2018) (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002)). Because Plaintiff has chosen not to present evidence contradicting Defendants' documentary evidence and sworn affidavits (Plaintiff has not responded at all), the only question is whether Defendants have met their initial burden of showing that there is no genuine issue of material fact requiring trial. "When the moving party meets this burden, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). *PepsiCo, Inc.*, 315 F.3d at 105 (quoting another source).

      iv.      **The Administrative Defendants**

Plaintiff sues Superintendent Sheahan and Commissioner Annucci for DOCCS's failure to provide the requested drug therapy at an earlier date. However, assuming *arguendo* that Plaintiff has shown an objectively serious medical condition, supervisory officials are generally permitted to rely on the opinions of medical staff concerning the correct course of treatment. *See White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988); *Smiley v. Westby*, 1994 WL 51997, at *8 (S.D.N.Y. 1994) ("[A] warden who receives assurances from his medical staff that an inmate is receiving appropriate care will ordinarily be insulated from § 1983 liability."); *Liscio v. Warren*, 718 F. Supp. 1074, 1082 (D. Conn. 1989) (granting summary judgment to a prisoner administrator who,

"justifiably may defer to the medical experts regarding treatment of inmate/patients"), *rev'd on other grounds*, 901 F.2d 274 (2d Cir. 1990). Plaintiff

> was under medical treatment. [He] suggests no basis on which to conclude that [administrators] should have challenged the responsible doctors' diagnosis. One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason.

*Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000).

Further, neither Defendant Sheahan nor Defendant Annucci were personally involved in the constitutional deprivation, assuming *arguendo* that Plaintiff has shown such a violation. A plaintiff must demonstrate that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). "Accordingly, for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id*.

There are no allegations against Defendant Annucci other than as a link in the chain of command. The allegations against Defendant Sheahan are only that he approved the denial of Plaintiff's grievance regarding his medical care. Plaintiff "does not allege that [the Superintendent] did anything more than rely on the conclusions provided by the [DOCCS] medical staff in failing to address his grievances." *Benitez v. Parmer*, 9:12-CV-0448 GTS/DEP, 2013 WL 5310245, at *6 (N.D.N.Y. July 8, 2013), *report and recommendation adopted*, 9:12-CV-0448 GTS/DEP, 2013 WL 5310220 (N.D.N.Y. Sept. 20, 2013], aff'd, 654 F. App'x 502 (2d Cir 2016). Therefore, because non-medical, supervisory Defendants are permitted to rely on the expert opinion of prison medical personnel, and because neither Annucci nor Sheahan has been shown to have a subjective knowledge of a substantial risk of harm, there is no genuine issue of material

fact requiring trial. The Motion for Summary Judgement by Defendants Sheahan and Annucci must be granted.

### v.     The Prison Medical Defendants

Plaintiff also sues Physician's Assistant Haimes and Nurse Administrator Jansen for DOCCS's failure to provide the requested drug therapy at an earlier date. However, again assuming *arguendo* that Plaintiff has shown an objectively serious medical condition, neither Haimes nor Jansen were responsible for or capable of prescribing the drug treatment which Plaintiff sought. If they did all that they were capable of under the circumstances, their inability to overrule Defendant Koenigsmann is fatal to Plaintiff's claim of deliberate indifference as the Second Circuit's recent explanation of the rules governing a DOCCS employee with limited authority makes clear.

> [Plaintiff] also argues that [defendant] knew that the lack of cameras in the Davis Building increased the risk of sexual abuse. However, [plaintiff] acknowledges that [defendant] had discussed the need for cameras with the warden and deputy warden. Moreover, it is undisputed that [defendant] was not responsible either for procuring cameras or for York's camera policy. The district court correctly concluded that apart from discussing this problem with other officials, [defendant] had no further responsibility to resolve it.

*Tangreti*, 983 F.3d at 620 n.7 (2d Cir. 2020).

Defendant Jansen's sole alleged involvement was in denying Plaintiff's grievance concerning Koenigsmann's refusal to order triple drug therapy. However Jansen, a Nurse Administrator, relied on the statements of Plaintiff's physicians, could not issue the required prescriptions, and had no authority over Dr. Koenigsmann, DOCCS's Chief Medical Officer.[3]

---

[3] While the denial of triple drug therapy was ongoing, potentially establishing personal involvement of Defendant Jansen if there was a violation, it was not one which he had the authority to remedy. *See Valverde v. Folks*, 1:19-CV-08080-MKV, 2020 WL 5849515, at *12 (S.D.N.Y. Sept. 30, 2020) ("The Court finds the ongoing violation approach [to personal involvement through the denial of a grievance] sound in light of [*Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009)]'s teaching that mere knowledge of a constitutional violation is insufficient to constitute a violation by a supervisor. Applying the ongoing violation approach, the Court concludes that Plaintiff has failed to establish personal

"The record is devoid of any evidence suggesting that Nurse Smith had authority to deviate from [the doctor]'s policy. The fact that Nurse Smith confirmed the policy only after placing an order for [plaintiff]'s [medical equipment], moreover, does not support a finding that Nurse Smith acted with the requisite intent." *Griffin v. Amatucci*, 611 F. App'x 732, 735 (2d Cir. 2015) (overruling District Court denial and granting summary judgement).

Similarly, Defendant Haimes was the official who put forward Plaintiff's first request for treatment, and as a Physician's Assistant could neither prescribe the necessary medicine nor overrule the Chief Medical Officer's denial of this request. Thus, Jansen and Haimes, having performed their functions with respect to Plaintiff's complaint to the limits of their authority, "had no further responsibility to resolve it." *Tangreti*, 983 F.3d at 620 n7 (2d Cir. 2020). There is no genuine issue of material fact regarding either personal involvement by these two Defendants or deliberate indifference to Plaintiff's medical needs, and, therefore, the Motion for Summary Judgement by Defendants Haimes and Jansen must be granted.

    **vi.**    **Chief Medical Officer Dr. Koenigsmann**

        **a.**    **Overview**

The claims against Defendant Koenigsmann depend on a showing that the delay in providing Plaintiff with drug treatment for his HCV constituted an Eighth Amendment violation both in the severity of the consequences of delay and in the subjective requirement of deliberate indifference. *See* Sections C(i) and C(ii) above.

---

involvement by [defendant] because Plaintiff has not alleged that he suffered from an ongoing constitutional violation *that [defendant] could have remedied.*" (emphasis supplied)).

          **b.**      **Consequences of Delay Were Insufficient to Meet the Objective Standard**

Where a plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element may only be satisfied by harm that resulted from the delay. *Ocampo v. Fischer*, No. 11CV4583CBARER, 2018 WL 1513627, at *6 (E.D.N.Y. Mar. 27, 2018). Further, "multiple district courts in this Circuit, and at least four Circuit courts, have concluded that a plaintiff who complains that a delay in medical treatment rose to a constitutional violation *must place verifying medical evidence* in the record to establish the detrimental effect of the delay in medical treatment." *Ray v Zamilus*, 13 CIV. 2201 (PGG), 2017 WL 4329722, at *10 (S.D.N.Y. Sept. 27, 2017) (emphasis supplied) (collecting cases).

Specifically with regard to a delay in the treatment of HCV, "where such claims have survived summary judgment, they generally have been supported by medical evidence demonstrating that the delay in treatment either made the eventual treatment less effective, or presented a risk that treatment would be less effective." *Ocampo*, 2018 WL 1513627 at *7. Plaintiff has not responded to the Motion for Summary Judgement, and so has put forth no evidence, medical or otherwise, to suggest that the delay in treatment adversely affected its efficacy. Indeed, Plaintiff's medical records establish that he is effectively cured, and so no allegations of reduced efficacy were possible. ECF No. 54-5 ¶ 54.

Plaintiff's primary complaint is that he suffered from various symptoms (high fever, loss of sleep, night sweats and extreme pain) during the period when he was denied triple drug therapy until he was provided with the Harvoni which cured him. ECF No.16 ¶ 12. Dr. Koenigsmann states that these are not symptoms of HCV (ECF No. 54-5 ¶ 55) and without a medical basis, no reasonable juror could find that Plaintiff's symptoms were caused by HCV. *Ocampo*, which also

14

addressed a delay by Defendant Koenigsmann in approving treatment of HCV in a case where Plaintiff did not respond to the motion for summary judgement, is again enlightening. Plaintiff,

> has not offered evidence sufficient to demonstrate that the alleged delay in his Hepatitis C treatment (1) caused his Hepatitis C condition to worsen; (2) presented a risk that the eventual treatment would not be successful or otherwise caused him to have a worse prognosis; or (3) caused any adverse medical effect. Because [plaintiff] has not offered evidence sufficient to create a material issue of fact as to the objective prong of the Eighth Amendment inquiry, defendants are entitled to summary judgment.

*Ocampo*, 2018 WL 1513627 at *8 (internal quotation marks omitted). Indeed, it is clear from Plaintiff's medical records that his HCV status, as measured by the fibrosis stage, remained at a consistently low level and at times improved despite the absence of treatment. *See* Section B(ii). Plaintiff has offered no competent medical evidence to counter Defendant Koenigsmann's professional assertion that the alleged symptoms were not a product of his HCV infection. Thus, there is no evidence sufficient to create a genuine issue of material fact requiring trial regarding the objective prong of the Eighth Amendment test.

### c. No Showing of Deliberate Indifference to Meet Subjective Standard

"Although [Plaintiff] may have preferred different treatment, it is well-established that so long as the treatment given is adequate, mere disagreement over the proper treatment does not create a constitutional claim." *Brown v Cade*, 698 F. App'x 33, 34 (2d Cir. 2017) (quoting *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011)) (internal quotation marks and edits omitted). Further, to meet the subjective prong of deliberate indifference, the inmate must show that the Defendant acted with a sufficiently culpable state of mind, which

> requires that the prisoner prove that the charged official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Farmer*, 511 U.S. at 837).

The uncontradicted statements of Defendant Koenigsmann are that the delay in treatment was necessary for medical reasons and was in line with the recommendations of the AASLD in treatment of HCV. Specifically, the triple drug therapy which Plaintiff was denied after his first treatment request had been discontinued by DOCCS as unsafe, and Plaintiff's fibrosis level was not sufficiently advanced to warrant emergency use of a dangerous medical therapy, and thus the denial was "supported by legitimate reasons." *Brown v. Cade*, 698 F. App'x 33, 34 (2d Cir. 2017). Plaintiff's second treatment request was granted, and the Harvoni, which Dr. Koenigsmann knew was in development and had in mind when he denied the first treatment request, was used to safely cure Plaintiff's HCV.

Finally, the uncontradicted statement of Defendant Koenigsmann is that he was unaware of the symptoms which Plaintiff erroneously attributes to his HCV infection, and so they do not establish a genuine issue regarding deliberate indifference. "[T]he record would not permit a reasonable trier of fact to find that defendant[ was] deliberately indifferent to [Plaintiff]'s medical needs," and summary judgement is appropriate. *Brown*, 698 F. App'x at 34.

## CONCLUSION

For these reasons, the Court finds that there are no genuine issues of material fact as to Plaintiff's claims. The Defendants' Motion for Summary Judgement is GRANTED in its entirety, and the Amended Complaint dismissed with prejudice in its entirety.

FURTHER, that the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of

Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    IT IS SO ORDERED.

Dated: March 2, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court